# Case: 1:15-cv-09971-JMF

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

DORIS POWLEDGE PHILLIPS

*Appellant,*

v.

GENERAL MOTORS LLC

*Appellee.*

---

*On Appeal from an Order of the*
*United States Bankruptcy Court Southern District of New York*

---

## BRIEF OF APPELLANT

---

Joshua P. Davis
**JOSH DAVIS LAW FIRM**
1010 Lamar, Suite 200
Houston, Texas 77002
Telephone: (713) 337-4100
Facsimile: (713) 337-4101
*josh@thejdfirm.com*
**Attorney for Doris Powledge Phillips**

Joshua P. Davis
**JOSH DAVIS LAW FIRM**
1010 Lamar, Suite 200
Houston, Texas 77002
Telephone: (713) 337-4100
Facsimile: (713) 337-4101

*Attorney for Doris Phillips*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**In re**                                                                    :

                                                                               :

**MOTORS LIQUIDATION COMPANY,** *et al.,*   :        **Case No.: 15-09971 (ER)**

                **f/k/a General Motors Corp.,** *et al.*        :

                                                                               :

                                        **Debtors.**        :

                                                                               :

-----------------------------------------------------------x


"To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

*Bailey v. Glover*, 88 US 342, 349, 22 L Ed 636 (1874).

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................iii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUE PRESENTED .......................................................................... 2

I. INTRODUCTION ........................................................................... 3

II. FACTUAL BACKGROUND ............................................................ 4

III. STANDARD OF REVIEW ON APPEAL ........................................ 7

IV. ARGUMENT................................................................................ 9

    A. The Bankruptcy Court erred by Finding that Phillips Assigned her Right to Assert Fraud Claims against GM ............................................ 9

        1. The bankruptcy court improperly based its entire decision on the language of an agreement that was the result of GM's fraud in the underlying litigation ................................................... 10

        2. Phillips assignment of her original claim does not preclude additional recovery and would not result in double recovery ....... 12

        3. The Bankruptcy Court clearly erred in ignoring relevant authority that entitles Phillips to relief, even if she is not a "party" to a pending action involving Claim 44614 ..................................... 16

V. CONCLUSION............................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*ACLI Intern. Commodity Servs., v. Banque Populaire Suisse.,*
609 F.Supp. 434 (S.D.N.Y. 1984) ........................................................................ 11

*Bailey v. Glover,*
88 US 342 (1874)........................................................................................................ i

*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,*
57 F.3d 146 (2d Cir. 1995)..................................................................................... 10

*Binker v. Pennsylvania,*
977 F.2d 738 (3d Cir. 1992)................................................................................... 16

*Browder v. Director, Dept. of Corrections of Ill.,*
434 U.S. 257 (1978)................................................................................................... 8

*Byrnes v. Nat'l Union Ins. Co.,*
34 A.D.2d 872 (1970) ................................................................................................ 8

*Congregation Mischknois Lavier Yakov, Inc. v. Bd. Trustees of Vill. of Airmont,*
301 Fed. Appx. 14 (2d Cir. 2008)......................................................................... 15

*Dunlop v Pan Am. World Airways, Inc.,*
672 F2d 1044 (2nd Cir. 1982)......................................................................... 16, 17

*Eyak Native Village v. Exxon Corp.,*
25 F.3d 773 (9th Cir.1994) ............................................................................. 16, 17

*Grace v Bank Leumi Trust Co. of NY,*
443 F3d 180 (2nd Cir. 2006)................................................................................. 16

*In re Lawrence,*
293 F3d 615 (2nd Cir. 2002)................................................................................. 16

*In re Terrorist Attacks on September 11, 2001,*
741 F.3d 353 (2d Cir. 2013)(*cert. denied*) ................................................................. 8

*Inman v. Merchants Mutual Cas. Co.,*
274 A.D. 320 (1948) ................................................................................................ 8

*Klapprott v. United States,*
335 U.S. 601, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949) ........................................... 8

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................................................... 16

*Playboy Enterprises Intern., Inc. v. On Line Entm't, Inc.*
CIV.A. CV006618DGT, 2004 WL 6268077 (E.D.N.Y. Mar. 29, 2004) ............... 15

*Seneca Wire & Mfg. Co. v. A.B. Leach & Co.,*
247 N.Y. 1 (N.Y. 1928) ......................................................................................... 15

*Slotkin v. Citizens Cas. Co. of New York,*
614 F.2d 301 (2d Cir. 1979)........................................................................ 13, 14, 15

*Southerland v. Irons,*
628 F.2d 978 (6th Cir. 1980) ................................................................................. 17

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
162 F.3d 724 (2d Cir. 1998)..................................................................................... 8

## STATUTES & RULES

FED. R. BANKR. P. RULE 8002 ...................................................................................... 1

FED. R. BANKR. P. RULE 8003 ...................................................................................... 1

FED. R. CIV. PRO. RULE 60(b) ............................................................................. *passim*

FED. R. CIV. PRO. RULE 60(b)(4) ................................................................................ 15

11 U.S.C. §105 ................................................................................................ 1

11 U.S.C. Chapter 11 ..................................................................................... 1

28 U.S.C. §158(a) .......................................................................................... 1

## <u>JURISDICTIONAL STATEMENT</u>

This appeal is the result of the Bankruptcy Court's decision regarding Doris Powledge Phillips' Motion for 60(b) Relief in the underlying bankruptcy action, *In re Motors Liquidation Co*., 09-50026 (REG). The Bankruptcy Court had jurisdiction over the underlying matter pursuant to 11 U.S.C. §105 and 11 U.S.C. Chapter 11. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a) and Rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure. The Bankruptcy Court issued its Memorandum Opinion and Order on June 18, 2015 (ECF 13225), and issued its Order on Motion for 60(b) Relief on June 29, 2015 (ECF 13258). Phillips filed her initial Notice of Appeal on July 10, 2015. Accordingly, this appeal was timely perfected.

## ISSUE PRESENTED

Did the Bankruptcy Court err in denying Phillips' Motion for 60(b) Relief?

The appropriate standard of review is set forth below.

# I.   <u>INTRODUCTION</u>

Doris Powledge Phillips recognizes that this Court is confronted daily with claims of injustice. It seems that claims of injustice follow every party's petition for relief in matters related to General Motors LLC ("**New GM**"). Phillips' makes this humble appeal.

At its heart Phillips' request, when compared to all manner of issues presently being litigated now and years from now related to New GM, is relatively minor in scale: That Phillips be given a single *legitimate* opportunity to have her day in court complete with the benefits of due process. Phillips *has* a claim. But the claim she now has is separate and distinct from the merits of the underlying product defect Phillips believes killed 5 members of her family. The claim is fraud.

Phillips' 60(b) motion and this appeal are hail Mary attempts with a single purpose: holding New GM accountable for its role in fraudulently inducing Phillips' agreement to settle her product defect case in August 2010. Because of Phillips' unique position—a pre-sale accident litigant that filed a proof of claim—she is presented with unique challenges unlike any other party seeking to hold New GM accountable. Thus the need for 60(b) relief.

Thankfully the Rules have fashioned a tool for extraordinary circumstances, when parties are taken advantage of by another's fraudulent conduct in litigation. Rule 60(b) is that tool. When a party's right to due process is violated by fraud the

system must respond by crafting a remedy to confront the fraud. The Rules should not facilitate and finalize fraud, which is exactly what the bankruptcy court's Decision on Motion for 60(b) Relief does—it rubber stamps New GM's fraud on Phillips. Phillips moves the Court to reverse the bankruptcy's decision regarding assignment.

## II.   <u>FACTUAL BACKGROUND</u>

On October 18, 2005 Adam Powledge was driving his four children, Isaac, Rachel, Christian, and Jacob to school in the family's 2004 Chevrolet Malibu Classic, VIN 1G1ND52F34M598780 ("**<u>Subject Vehicle</u>**"). As Adam approached the 4600 Block of I-45 North in Houston, Texas he lost control of the Subject Vehicle and drove onto a grassy median.[1] Witnesses described the Subject Vehicle traveling at a high rate of speed, even as other vehicles began slowing for approaching traffic. Unable to control the vehicle, the Subject Vehicle drove in an almost perfectly straight line until it was cut into two parts, down the middle, by a metal pole located at the center of the median.[2] The car caught fire.

Adam, Rachel, Isaac, Christian and Jacob died at the scene. The wreckage was so severe that valuable evidence was lost, including the crash data retrieval ("CDR") system information.

---

[1] ECF 13090, Ex. 1. *Texas City Police Department Accident Report dated 10-18-2005*.
[2] *Id.* at 3.

4

On September 6, 2007 Phillips filed suit against General Motors Corporation ("**Old GM**") asserting that the crash was the result of an electrical malfunction ("**2007 Litigation**").[3] During the course of the 2007 Litigation the parties engaged in substantial discovery. Old GM blamed Adam for the crash—Old GM's primary legal defense was that Adam committed murder-suicide and acted purposefully. Phillips' case was substantially hindered by a lack of physical evidence, no CDR, and the limited documents produced by Old GM that were insufficient to substantiate Phillips' theory of a defect. Phillips sought documents that we now know exist— mainly documents that demonstrate product defects in cars identical or very similar to the Subject Vehicle that create an inability to steer or brake.

On June 1, 2009 Old GM entered bankruptcy protection. 40 days later New GM was created and then instantly purchased Old GM's good stuff, avoiding much of the bad (much more than anyone realized—other than Old and New GM). As the Court noted in its Opinion and Order of December 30, 2015 (Docket No. 1980), with the 393 sale New GM acquired independent knowledge from Old GM when it purchased substantially all of Old GM's employees, officers and management personnel. *Id.* at 4. Just as that independent knowledge included persons intimately familiar with the ignition switch defect, New GM's new knowledge also included

---

[3] ECF 13090, Ex. 2, *Plaintiffs' Fourth Amended Petition, Powledge, et al v. General Motors Corp.,* Cause No. 07-CV-1040 (July 3, 2008).

persons directly controlling Phillips' 2007 Litigation.

Phillips' claim that Old GM—and, after acquiring independent information, New GM—failed to disclose information material to Phillips' valuation of her claim in bankruptcy is presumed. *See In re Motors Liquidation Co.*, 09-50026 (REG), Docket No. 13190 at 4 (Bankr. S.D.N.Y. June 8, 2015)("*Assignment Decision*")("[T]he Court assumes [Old GM failed to appropriately respond to her discovery requests] to at least represent an issue she wishes to pursue…"). Phillips' new causes of action as outlined in her Second Amended Complaint, *In re Motors Liquidation Co.*, 09-50026 (REG), Docket No. 12807-4, are brought against New GM. The new claim against New GM—and as appropriate, Old GM—is fraud. It is Phillips' contention that her fraud claim against New GM, like all other pre-sale accident plaintiffs alleging fraud against New GM, is a new claim that arose post-sale and, as a legal matter, is pending before the Second Circuit as an appeal of Judge Gerber's April decision. *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015)( "*April Decision*"). As this Court noted, the bankruptcy court's *November Decision* left the door open for independent causes of action against New GM "based on New GM knowledge and conduct alone." (Docket No. 1980 at 4)(*citing November Decision* at 108).

But as a preliminary matter Phillips' Rule 60(b) Motion concerns the August 9, 2010 Stipulation and Settlement Resolving Claim No. [44614] ("*Settlement*

*Agreement*"). It should be noted that Phillips was ordered to mediate the 2007 Litigation by the bankruptcy court, and subsequently agreed to the Settlement Agreement based on a fundamental belief—that Old GM was litigating in good faith and adhering to due process by producing relevant, discoverable evidence. That belief was misplaced.

Following the Settlement Agreement Phillips sold the consideration provided in the settlement—an allowed unsecured claim of approximately $2.7 million—to Dover Master Fund II ("**Dover Fund**"). As part of Phillips' sale to Dover Fund an assignment was made, Assignment of Claim to Dover Fund (the "**Assignment**"). As part of its findings of fact the bankruptcy court quotes liberally from the Assignment, and presumably includes all language that supports that court's finding of assignment.

Nowhere found in the Assignment is any mention of Phillips assigning Dover Fund the right to any fraud claim or conspiracy to commit fraud claim. Phillips assigned to Dover Fund exactly what it purchased—an allowed unsecured claim for a fixed amount. That fixed amount was established in the Settlement Agreement. A settlement agreement procured through fraud.

## III.   STANDARD OF REVIEW ON APPEAL

Rule 60(b) allows courts to relieve a party or its legal representative from any final judgment, order, or proceeding based on five specific grounds or, generally,

"any other reason that justifies relief."[4] The general "any other reason that justifies relief" clause "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."[5] When properly applied, "Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments."[6] "[T]he interest in finality is outweighed by the interest in treating victims of the same tort consistently."[7]

Appellate courts review denials of Rule 60(b) motions for abuse of discretion.[8] An appeal from the denial of Rule 60(b) relief does not bring up the underlying judgment for review.[9] A court abuses its discretion in denying a Rule 60(b) motion if its decision is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence.[10]

Phillips' statement of issues on appeal identified 9 issues. But the bankruptcy court's Assignment Decision solely concerned assignment. Accordingly, Phillips reserves briefing on the other matters until such time as the Court rules on the issue of assignment.

---

[4] FED. R. CIV. P. 60(b).
[5] *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949).
[6] *In re Terrorist Attacks on September 11, 2001*, 741 F. 3d 353, 357 (2d Cir. 2013).
[7] *Id.* (internal citations omitted).
[8] *Browder v. Director, Dept. of Corrections of Ill.*, 434 U.S. 257, 263, n. 7, 98 S.Ct. 556, 560, n. 7 (1978).
[9] *Id.*
[10] *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998), *citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

# IV.   ARGUMENT

## A.   THE BANKRUPTCY COURT ERRED BY FINDING THAT PHILLIPS ASSIGNED HER RIGHT TO ASSERT FRAUD CLAIMS AGAINST GM

In its Assignment Decision the bankruptcy court failed to address the merits of Phillips' 60(b) motion, instead denying the motion based on its finding that Phillips lacked standing. Reasoning that Phillips' "assigned away all of her rights with respect to the claim" when she sold the allowed unsecured claim to Dover Fund, the bankruptcy court held that Phillips was no longer a party or party's representative entitled to relief under Rule 60(b).[11] The bankruptcy court's finding regarding Phillips' standing constitutes an abuse of discretion for three reasons:

1. The bankruptcy court abused its discretion by basing its entire decision on the language of the Assignment between Phillips and Dover Fund, rather than the consideration supporting the Assignment—GM's fraudulently procured Settlement Agreement. And even considering the plain language of the Assignment the bankruptcy court fails to point to *any* language sufficient to meet the high burden required to evidence the assigning of a fraud claim.

2. The bankruptcy court erroneously concluded that granting Phillips 60(b) relief would create a double recovery for Phillips. But this is clear error. The amount of Phillips' allowed unsecured claim sold to Dover Fund is fixed—the parties to the Assignment knew the value of what was assigned. Allowing Phillips to pursue additional damages based on information New GM knowingly withheld during the underlying litigation is not only equitable, it will have no effect on the amount of Dover Fund's bankruptcy claim.

---

[11] Phillips' Designation of Record No. 33, Decision on Motion for 60(b) Relief, p. 7.

3. Even if Phillips is not a "party" to a pending legal action related to Claim 44614, she nonetheless possesses standing to request relief from the settlement agreement. Second Circuit case law recognizes that non-parties are entitled to Rule 60(b) relief when they, like Phillips, are sufficiently connected to the action they are seeking relief from.

   1. _The bankruptcy court improperly based its entire decision on the language of an agreement that was the result of GM's fraud in the underlying litigation_

In finding that Phillips lacked standing to pursue her Rule 60(b) motion, the bankruptcy court relied exclusively on the Assignment between Phillips and Dover Fund. However, Phillips' decision to enter into the Settlement Agreement with GM and the Assignment with Dover Fund eleven days later were both premised on the incorrect assumption that Old GM had complied with its discovery obligations and that New GM was not actively engaged in a conspiracy to commit fraud. These bad acts substantially impacted Phillips' ability to access and value the merits of the 2007 Litigation.

Fraud exists when there is (1) a material misrepresentation or omission, (2) that was made by the defendant with an intent to defraud the plaintiff, (3) that was reasonably relied on by the plaintiff, and (4) that caused injury to the plaintiff.[12] Old and New GM's active concealment of material evidence in the 2007 Litigation induced Phillips into signing the Settlement Agreement. And, Phillips certainly

---

[12] _Banque Arabe et Internationale D'investissement v. Maryland Nat'l Bank_, 57 F.3d 146, 153 (2d Cir. 1995)

would have never entered into the sale agreement with Dover Fund absent the fraudulently procured Settlement Agreement.

Damages caused by fraud in connection with the settlement form an independent cause of action separate and distinct from any claims assigned to Dover Fund arising from the bankruptcy claim premised on the underlying auto accident. It is well established that "the assignment of a contract does not automatically transfer related tort claims."[13] With respect to fraud claims in particular, there can be no assignment unless (1) the assignment of the fraud claim is explicitly stated in the assignment, or (2) the assignment of the fraud claim is clearly evident by the parties' intent.[14] In New York  the assignment of fraud claims must be either (1) explicitly stated in the assignment, or (2) clearly evident by the parties' intent.[15]

For example, in *ACLI Intern. Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F.Supp. 434, 444 (S.D.N.Y. 1984) the court concluded that the real party in interest did not intend to assign their fraud claims based on testimony from the principal officers of the assignor. Here, the sale documents do not expressly assign any fraud claims, and it was impossible for Phillips to have the intention of assigning her fraud claim against Old or New GM because she did not know that the fraud claim existed at the time of the sale to Dover Fund. To deny Phillips the right to

---

[13] *Banque Arabe, 57* F.3d at 1207-09.
[14] *Id*. at 1210
[15] *Id.* at 1210 (*citing Fox v. Hirschfeld*, 142 N.Y.S. 261, 264 (1913)).

prosecute her claims using all material evidence that should have been available to her all along would yield the inequitable result of rewarding GM for its misconduct in the underlying action. The bankruptcy court's oversight of this crucial issue, along with its failure to point to any evidence of an *explicit assignment of a fraud claim to Dover Fund*, constitutes an abuse of discretion.

2.   *Phillips assignment of her original claim does not preclude additional recovery and would not result in double recovery*

An important part of the Bankruptcy Court's analysis rests on its incorrect assumption that "if Phillips were to prevail in her argument, there would be two separate recoveries, in favor of two separate claimants, on the same claim, with respect to the same accident."[16] This statement shows the bankruptcy court's fundamental misunderstanding of the purpose of Phillips' 60(b) motion. Phillips seeks relief from the Settlement Agreement in order to prosecute her *new* claims based on GM's fraud in procuring the Settlement Agreement. The fraud damages that Phillips seeks are separate and distinct from any distributions made on the bankruptcy claim arising from the auto accident. Moreover, GM's fraudulent procurement of the Settlement Agreement constitutes separate and distinct actionable conduct from any acts or omissions underlying its liability for a product defect that caused the Subject Vehicle to crash.

---

[16] Phillips' Designation of Record No. 33, Decision on Motion for 60(b) Relief, p. 9.

Dover Fund received exactly what it bargained for, an allowed unsecured claim of roughly $2.7 million. Dover Fund was not a party to and has no interest in the Settlement Agreement, and the damages caused by GM's fraudulent concealment of material evidence were suffered only by Phillips. The bankruptcy court appeared to weigh against Phillips the fact that she was not seeking to remit any funds received as a result of the settlement or unwind the sale of the bankruptcy claim to Dover Fund. However, these decisions were not only understandable, they were fully consistent with Phillips' rights under the law.

In *Slotkin v. Citizens Cas. Co. of New York*, the Second Circuit considered an appeal of a personal injury case in which the defendants fraudulently induced the plaintiff to enter into a settlement agreement.[17] When the plaintiff later discovered the fraud, she instituted another lawsuit to recover additional damages to those obtained through the settlement of the underlying personal injury claim.[18] In reversing the district court's judgment notwithstanding the verdict against the plaintiff, the Second Circuit held, "The law of New York is clear that <u>one who has been induced by fraudulent misrepresentation to settle a claim may recover damages</u>

---

[17] *Slotkin v. Citizens Cas. Co. of New York*, 614 F.2d 301 (2d Cir. 1979).
[18] *Id.*

<u>without rescinding the settlement</u>."[19] The court explained the reasoning behind the

rule as follows:

> The premises for the rule, however, are quite sound. If all that
> will result from a misrepresentation is a new trial, then the party
> making it has everything to gain and nothing to lose. The
> plaintiffs would be placed at a disadvantage by a new trial; the
> defendants would not. If anything, the defendants would benefit
> by having a preview of the plaintiff's case.[20]

Regarding the potential for double-recovery, the court held:

> Moreover, the rule does not present a problem of double
> recovery. In this case, for example, Judge Pollack appropriately
> instructed the jury that in fixing damages it should deduct from
> the 'fair settlement value' the $185,000 received under the
> settlement.[21]

Here, the relief Phillips seeks is exactly analogous to the facts of the *Slotkin* case:

she was fraudulently induced into a settlement of her personal injury claim and now

seeks to recover additional damages caused by the fraud. The relevant authority

discussed above entitles Phillips to the very relief she seeks and precludes the

possibility of double recovery, *i.e.* the proceeds she received in the settlement of the

underlying personal injury claim would be deducted from the judgment against GM

on her fraud claim. The bankruptcy court failed to make any mention of the legal

principle espoused in *Slotkin* and abused its discretion in denying Phillips her legal

---

[19] *Id*. at 312 (*citing Strong v. Strong*, 102 N.Y. 69, 73, 5 N.E. 799, 800 (1886), *Byrnes v. Nat'l Union Ins. Co.*, 34 A.D.2d 872, 310 N.Y.S.2d 781 (1970); *Inman v. Merchants Mutual Cas. Co.*, 274 A.D. 320, 323-24, 83 N.Y.S.2d 801, 804 (1948).
[20] *Id*.
[21] *Id*.

right to pursue her fraud claim. Instead the bankruptcy court states, without reference to any alternative legal principle to *Slotkin*, that Phillips' requested relief "is as illogical, and without basis in the law, as it sounds."[22] Clearly the bankruptcy court did not read *Slotkin*, as the Second Circuit has already held that this type of relief is exactly what the purveyors of fraudulently induced settlement agreements have coming to them—a consequence beyond a simple do-over: just punishment. The core concern when assessing 60(b) relief is the degree that due process was violated in obtaining a fraudulent settlement: "To be sure, so-ordered settlements have been held to be void on a Rule 60(b)(4) motion where the settlement and the underlying proceedings were fraught with serious irregularities which did indeed amount to a violation of the due process rights of one of the parties." *Congregation Mischknois Lavier Yakov, Inc. v. Bd. of Trustees for Vill. of Airmont*, 301 Fed. Appx. 14, 16 (2d Cir. 2008). This is to say nothing of the fact that a fraudulently procured settlement agreement is voidable without 60(b) relief.[23]

---

[22] Plaintiff's Designation of Record No. 33, Decision on Motion for 60(b) Relief, p. 10.

[23] *Playboy Enterprises Intern., Inc. v. On Line Entm't, Inc.*, CIV.A. CV006618DGT, 2004 WL 626807, at *4 (E.D.N.Y. Mar. 29, 2004), as amended (Apr. 1, 2004), aff'd, 135 Fed. Appx. 479 (2d Cir. 2005)(*quoting Restatement (Second) of Contracts* § 164 (1981))("'[A] party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party, upon which the recipient is justified in relying, the contract is voidable by the recipient.'"). Additionally, "[i]t is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, and this rule applies to actions at law based upon rescission as well as to actions for rescission in equity." *Seneca Wire & Mfg. Co. v. A.B. Leach & Co.*, 247 N.Y. 1, 7-8, 159 N.E. 700, 702 (1928)(citations omitted). While *Seneca* is mature precedent, it was cited approvingly for this exact proposition in *Playboy Enterprises. See Playboy Enterprises Intern., Inc.*, 2004 WL 626807 at *4.

Finally on this point, in finding a lack of standing concerning Phillips' allegations of fraud to induce settlement related to the death of her husband and 4 children, the bankruptcy court, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) states that Phillips is left "without a substantive right to enforce" a "legally protected interest" that is "concrete and particularized," or an "'injury in fact'" under Article III. *Assignment Decision* at 9, fn. 19. Respectfully, Phillips and only Phillips has suffered this particular and concrete pain—not any market makers at the Dover Fund or their investors.

3.    *The Bankruptcy Court clearly erred in ignoring relevant authority that entitles Phillips to relief, even if she is not a "party" to a pending action involving Claim 44614.*

Federal appellate courts in several circuits, including the Second Circuit, have held that Rule 60(b) does not impose a strict requirement that the movant for 60(b) relief be a party or party's representative. This is true despite the plain language of the Rule, especially when the movant's interests are strongly affected by the underlying judgment.[24] A fact the bankruptcy court begrudgingly acknowledges footnote 17 of the Assignment Decision. For example, in *Dunlop*, the Second Circuit held that non-parties had standing to seek relief from a federal judgment connected to a settlement between the Secretary of Labor and the defendant airline for ADEA

---

[24] *See Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 188 (2d Cir. 2006); *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1052 (2d Cir. 1982); *In re Lawrence*, 293 F.2d 615, 627, n. 11 (2d Cir. 2002), *citing Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994), *Binker v. Pennsylvania*, 977 F.2d 738, 745 (3d Cir. 1992).

claims.[25] The court based its decision on the fact that the settlement between the Secretary and the defendant prejudiced the rights of the non-parties to pursue age discrimination damages from the airline at the state court level.[26] In *Eyak Native Village v. Exxon Corp.*, the Ninth Circuit held that non-party movants had standing to seek relief from an agreement and consent decree between the State of Alaska and the defendant oil companies arising from a settlement of environmental damage claims caused by the defendants' oil spill.[27]  This holding was largely based on the fact that the settlement, which Alaska entered into "on behalf of the public," posed a significant risk of preventing the non-parties from pursuing additional damages to which they were entitled.[28] In *Southerland v. Irons*, the Sixth Circuit held that an entity not a party to an underlying settlement agreement had standing to set aside the agreement on 60(b) grounds, where the non-party had a substantial interest in the settlement agreement, and the agreement was procured by fraud.[29]

These cases are founded on the principle that Rule 60(b) was designed to promote equitable and just results in exceptional circumstances. All of the non-party movants in the cases discussed above would have lost the right to seek compensation or other relief justly owed to them should the underlying judgment or other action

---

[25] *Dunlop*, 672 F.2d at 1052.
[26] *Id*.
[27] *Eyak Native Village*, 25 F.3d at 777 (also holding, "[A] nonparty may seek relief from a judgment procured by fraud if the nonparty's interests are directly affected.").
[28] *Id*.
[29] *Southerland v. Irons*, 628 F.2d 978, 979-80 (6th Cir. 1980).

be allowed to stand. Here, Phillips' case presents the exact same exceptional circumstances: she will be barred from pursuing her new and independent fraud claim in the absence of 60(b) relief from the Settlement Agreement that was procured by GM's—Old and New—impropriety. The undisputed evidence before the bankruptcy court shows that the degree of Phillips' connection and interest in the underlying Settlement Agreement was greater than any previous case in which the Second Circuit allowed a non-party standing to pursue 60(b) relief. The bankruptcy court abused its discretion by ignoring this evidence and case law.

## V.    CONCLUSION

An avenue for relief exists for Phillips—as it exists for all pre-sale plaintiffs seeking justice concerning GM's—Old and New—fraud. Phillips asserts a claim and is entitled to pursue that claim, but must be relieved of the Settlement Agreement. Rule 60(b) provides a remedy—the tool to fix this unique problem, but one entirely created by GM to benefit GM. Phillips did not assign her fraud claim in the Assignment, and could not. The Court should reverse the bankruptcy court's *Assignment Decision* and remand for further proceedings.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation in the FEDERAL RULES OF BANKRUPTCY PROCEDURE Rule 8015(a)(7)(b) because it contains 4,199 words, excluding the parts of the brief exempted by FEDERAL RULES OF BANKRUPTCY PROCEDURE 8015.


/s/ <i>Joshua P. Davis</i>
Joshua P. Davis

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing instrument was served on all counsel of record via the Court's ECF system on January 28, 2016.

Arthur Steinberg
Scott Davidson
KING & SPALDING
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile:  (212) 556-2222
*asteinberg@kslaw.com*
*sdavison@kslaw.com*


Lisa H. Rubin
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-2390
Facsimile:   (212) 716 0790
*lrubin@gibsondunn.com*

          /s/ *Joshua P. Davis*
          Joshua P. Davis